UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA ROCHELLE LINEBARGER,

               Plaintiff,              CIVIL ACTION NO. 11-12949

          v.                 DISTRICT JUDGE MARIANNE O. BATTANI

COMMISSIONER OF           MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I.  PROCEDURAL HISTORY

### A.  *Proceedings in this Court*

On July 8, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's

decision to deny benefits (Dkt. No. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), the case was referred to this Magistrate Judge to review the Commissioner's decision

(Dkt. No. 2).  Cross-motions for summary judgment are pending (Dkt. Nos. 10-11, 16).

### B.  *Administrative Proceedings*

Plaintiff alleged that she became unable to work, and applied for benefits, on April 14,

2008 (Tr. 17, 113-122).  The claim was initially denied by the Commissioner on August 22, 2008

(Tr. 17, 58-65).  Plaintiff requested a hearing and, on January 8, 2010, Plaintiff appeared with

counsel before Administrative Law Judge ("ALJ") Michael R. McGuire, who considered the case

*de novo*.  In a decision dated February 19, 2010, the ALJ found that Plaintiff was not disabled

(Tr. 14-26).  Plaintiff requested a review of this decision on March 1, 2010 (Tr. 11-13).  The

-1-

ALJ's decision became the final decision of the Commissioner on May 25, 2011 when, after the review of additional exhibits[1] (AC-8E, Tr. 187-188), the Appeals Council denied Plaintiff's request for further review (Tr. 1-6).

In light of the entire record, this Magistrate Judge finds that the ALJ failed to give controlling weight to the medical evaluations of Plaintiff's treating psychiatrist or failed to adequately explain his reasons for not giving Plaintiff's treating psychiatrist controlling weight. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the discussion below.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

Plaintiff was 45 years old at the time of the administrative hearing. Plaintiff has past relevant work as a packer (Tr. 22).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since April 14, 2008 (Tr. 19).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: major depressive disorder with psychotic features and schizoaffective disorder. (Tr. 19).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listings in the regulations (Tr. 19-20).

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff can do simple tasks without public contact and only limited contact with supervisors and co-workers in a non-production rate setting" (Tr. 21).

At step four, the ALJ found that Plaintiff was not disabled, because she could perform her previous work as a packer (Tr. 22). Therefore, the ALJ did not reach step five of the disability analysis (Tr. 22).

### B.    *Administrative Record*

### 1.    **Plaintiff's Hearing Testimony and Statements**

Plaintiff testified that she had an 8-year-old son (Tr. 42). She spent most of the day watching TV, but she could cook, clean, wash dishes, and feed her son (Tr. 42, 46). Plaintiff said she had to take prescription medication for her depression and the voices she hears (Tr. 41-42). She admitted to prior drug and alcohol abuse, but claimed she had been clean for eleven months (Tr. 50). Plaintiff also mentioned a lower back problem that prevented her from mopping and vacuuming (Tr. 46).

Plaintiff testified that she did not go outside because she feared people would hurt her (Tr. 41, 44). She stated that "the voices" told her that people would hurt or kill her (Tr. 41). Plaintiff acknowledged that, when she took her medications, she did not hear "the voices" much because she was in her "own little world," but that she still did not go out while on the medication because its effect was only temporary (Tr. 42). Plaintiff refused to perform any tasks that required her to leave her apartment complex (Tr. 44-45). Plaintiff relied on her neighbor to take her laundry to the laundromat and walk her son to school (Tr. 44-45).

Plaintiff also completed a disability report and a function report regarding her condition. (Tr. 141-56). In the disability report, Plaintiff indicated that her mental problems limited her ability to work, but she made no mention of any physical ailments that affected her work (Tr. 141). In the function report, Plaintiff noted that her mental condition affected her ability to get along with others, but otherwise had no effect on her physical or cognitive capacity (Tr. 154).

### 2.      Medical Evidence

The Court first summarizes the medical evidence concerning Plaintiff's physical impairments related to her lower back problems, and then discusses the medical evidence related to her mental impairments.

#### i)      *Evidence of Physical Impairments*

Plaintiff was seen by family physician, Dr. Firas Zouabi, on roughly a monthly basis from July 2007 through October 2009 (Tr. 191, 193, 199, 201-07, 210-11, 256, 259-60, 269-72, 274-76, 280-86). During these visits, Plaintiff consistently complained of pain in her lower back and legs, and staff members repeatedly detected muscular spasms in Plaintiff's back (Tr. 191, 193, 199, 201-07, 210-11, 256, 259-60, 269-72, 274-76, 280-86). On several occasions, staff members also noted tenderness in Plaintiff's back (Tr. 202, 207, 210-11, 281, 282). No neurological conditions were detected by the physician's staff (Tr. 191, 193, 199, 201-07, 210-11, 256, 259-60, 269-72, 274-76, 280-86). Plaintiff was prescribed medication, including Vicodin (pain medication) and Flexeril (muscle relaxant) to help her back pains (Tr. 191, 193, 199, 201-07, 210-11, 256, 259-60, 269-72, 274-76, 280-86). Based upon both her physical and mental impairments, Plaintiff's primary care physician opined that she was not fit for full time employment (Tr. 209).

Plaintiff went to the emergency room in August 2009, complaining of muscle spasms in her shoulder (Tr. 265). She reported that she had been dealing with the spasms for many years, but they got worse over the several days prior to her emergency room visit (Tr. 265). A physical examination found Plaintiff had full range of motion in her right shoulder, and was not experiencing any other complications (Tr. 264). Plaintiff was diagnosed with acute muscle spasms, and was given morphine subcutaneous and Flexeril (Tr. 263, 265). Plaintiff was discharged with prescriptions for Vicodin and Flexeril, and instructed to follow-up with her primary care physician (Tr. 263).

ii)     *Evidence of Mental Impairments*

Beginning in May 2008, Plaintiff received consistent psychiatric treatment from Insight Recovery Center ("Insight") (Tr. 221-22, 293-302). In May 2008, initial intake assessments were performed by therapist Lorraine Applebaum and physician Dr. Gotlib (Tr. 214-24). Plaintiff acknowledged experiencing depression, anxiety, and having suicidal thoughts (Tr. 216, 218). Plaintiff also complained of hearing voices (Tr. 221). During the initial evaluation, Ms. Applebaum examined Plaintiff's mental status and indicated that she suffered from "mild" phobias, suspicious thoughts, and hallucinations (Tr. 220). Ms. Applebaum also indicated that Plaintiff suffered from severe depression and unrealistically low self-concept (Tr. 220). Except for the ailments described, Plaintiff's mental status was characterized as normal (Tr. 220). Plaintiff was diagnosed with schizo-affective disorder, and given a Global Assessment of Functioning ("GAF") score of 45 [2] (Tr. 221). Dr. Goltlib diagnosed Plaintiff with major

_____

[2] The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms...OR any serious

depression and psychotic features (Tr. 224). Dr. Gotlib did not assign a GAF score, but Plaintiff

was recommended for biweekly therapy sessions and given a subscription for Prozac (anti-

depressant) (Tr. 224). Further mental status examinations by Dr. Gotlib throughout 2008 and

2009 indicated normal findings (in appearance, expression, behavior, judgment, self-esteem,

thought content, speech and language, memory, gait, and gross motor function) with the

exception of depressed affect (Tr. 298, July 2008; Tr. 297, Oct. 2008; Tr. 296, Dec. 2008; Tr.

295, Feb. 2009; Tr. 294, July 2009; Tr. 293, Sept. 2009).

In August 2008, Dr. Gotlib performed a medical assessment of Plaintiff's ability to do

work-related activities (Tr. 289-90). Dr. Gotlib noted that Plaintiff had "good" ability to follow

work rules (Tr. 289). Dr. Gotlib also indicated that Plaintiff had "fair" ability to use judgment;

function independently; maintain attention; understand, remember, and carry out job instructions,

regardless of complexity; maintain personal appearance; and demonstrate reliability (Tr. 289-90).

However, Dr. Gotlib determined that Plaintiff had "poor" ability to relate to co-workers; deal

with work stresses; interact with supervisors and the public; behave in an emotionally stable

manner; and relate predictably in social situations (Tr. 289-90).

In August 2008, licensed psychologist Nick Boneff, Ph.D. conducted a consultative

mental status exam in connection with Plaintiff's disability claim (Tr. 230). Plaintiff reported

that, beginning with her cousin's death in January, she felt unable to work, because she did not

like being around people (Tr. 230). Although Dr. Boneff noted that Plaintiff was cooperative and

appeared to be an accurate historian, he also observed that she seemed to be in questionable

---

impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51
to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc.
Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). "A GAF score may help an ALJ assess mental RFC, but it is not raw
medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general
assessment, understandable by a lay person, of an individual's mental functioning." *Kornecky v. Comm'r of Soc.
Sec.*, 167 F. App'x 496, 502 fn. 7 (6th Cir. 2006).

contact with reality (Tr. 231).  However, Dr. Boneff found no evidence of an overt thought

disorder (Tr. 231).  While Plaintiff's thoughts were somewhat slowed at times, she gave logical,

goal directed answers to all of the questions Dr. Boneff asked (Tr. 231).  Plaintiff indicated that

she used to hear voices of dead people, including her dead cousin and grandmother, but that the

voices are going away, possibly due to the medications (Tr. 232).  Plaintiff was diagnosed with

schizo-affective disorder and substance abuse in remission, and assigned a GAF score of 47 (Tr.

233).

On January 25, 2010, Dr. Gotlib and Ms. Applebaum issued a letter expressing their

belief that Plaintiff was not fit for work in any environment (Tr. 310).  The bases offered for this

conclusion were Plaintiff's hallucinations, her fear of others, and her inability to maintain

attention and concentration (Tr. 310).

### 3.      Vocational Expert

The ALJ asked the vocational expert ("VE") a hypothetical question regarding what work

could be performed by a person with Plaintiff's age, education, and vocational profile. (Tr. 51).

The ALJ stated that Plaintiff was capable of performance of light unskilled work, consisting of

simple one- and two-step tasks, in a non-production-rate environment, and with no contact with

the public and limited contact with supervisors and coworkers. (Tr. 51-52). The VE testified that

such a person could perform Plaintiff's past work as a hand packager, but was not fit for

manufacturing positions with required production rates. (Tr. 51-52).

### C.      *Plaintiff's Claims of Error*

Plaintiff raises three main arguments on appeal. First, Plaintiff argues that the ALJ failed

to properly consider multiple pieces of medical evidence which were consistent with a finding of

disability. Second, Plaintiff contends the ALJ did not employ the correct legal standard for

evaluating the opinion of a treating medical source. Third, Plaintiff argues that the ALJ's failure

to find that the Plaintiff's back problem was a severe impairment violated the SSA's policy for

the step-two determination of severity. (Pl.'s Br. at 2-16). This Magistrate Judge finds Plaintiff's

second argument persuasive and recommends remand on that basis.

## III.   DISCUSSION

### A.   *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the

administrative agency handles claims, and the judiciary merely reviews the agency determination

for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*,

493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency

makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found

during this administrative review process, the claimant may file an action in federal district court.

*Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact

unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In

deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de

novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499

F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of

course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.
>
> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§

404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding

at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.

### C.    *Analysis and Conclusions*

As noted above, Plaintiff raises three arguments on appeal (Pl.'s Br. at 2-16). The first issue is whether the ALJ properly considered several pieces of medical evidence that were consistent with a finding of disability (Pl's Br. at 2, 7-10). Specifically, Plaintiff alleges that the ALJ "failed to even mention, much less analyze, several ...medical findings and opinions in the record which were consistent with a finding of disability" (Pl.'s Br. at 9).

### 1.    The ALJ Properly Considered All Relevant Medical Opinions

In considering evidence of disability, the Sixth Circuit has repeatedly held that opinions of a treating physician are entitled to controlling weight, and are more persuasive than contrary opinions of a consulting physician who has examined the claimant on only a single occasion. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). The uncontradicted opinion of a treating physician is entitled to deference. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524 (6th Cir. 1992). However, the opinion of a treating physician may be properly rejected where it is not sufficiently supported by medical findings and consistent with other evidence, as long as good reasons are provided. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). Further, opinions regarding a claimant's ability to work are not medical source opinions and are not entitled to deference. *See* 20 C.F.R. § 404.1527(d)(1). The Commissioner is ultimately responsible for determining whether the claimant is disabled. *Id.* No special significance is given to opinions of disability,

-12-

even those made by a treating physician.  *See* 20 C.F.R. §§ 404.1527(d)(1)-(3); *Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010).

In determining whether Plaintiff has a medically determinable impairment, the ALJ must rely on information from "acceptable medical sources." *See* SSR 06-03p, 71 Fed. Reg. 45593 (Aug. 9, 2006).  A therapist is not considered an "acceptable medical source," and thus information from a therapist cannot be used to establish the existence of a medically determinable impairment; it can only be used to determine severity. *Id.* (stating that "acceptable medical sources" include licensed physicians, psychologists, optometrists, podiatrists, and speech-pathologists).  Therefore, although Ms. Applebaum developed a relationship with Plaintiff as a treating therapist, her diagnosis of schizo-affective disorder is not entitled to the level of deference afforded to a treating physician.

Plaintiff identifies four pieces of medical evidence that were not mentioned in the ALJ's final decision: (1) the GAF score of 45 that was assessed by treating therapist Ms. Applebaum; (2) the GAF score of 47 assigned by SSA consultive psychologist Dr. Boneff; (3) the medical assessment of ability to do work-related activities completed by treating psychiatrist Dr. Gotlib; and (4) the assessment provided by primary care physician Dr. Zouabi that, due to her lower back problems and mental impairments, Plaintiff was not able to work in any environment (Pl.'s Br. at 9-10).  Plaintiff argues that the ALJ's failure to acknowledge these four different medical opinions constitutes a rejection of their contents, and is manifest legal error warranting remand. (Pl.'s Br. at 11). This Magistrate Judge disagrees.

First, GAF scores are of limited significance in disability cases. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (holding that there is no controlling authority requiring the ALJ to put stock in a GAF score) (citations omitted).  A GAF score merely

-13-

represents the clinician's judgment as to the individual's overall level of functioning. *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006). "[A]ccording to the [Diagnostic and Statistical Manual's] explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511. Thus, failure to reference a GAF score, by itself, is not sufficient ground to reverse a disability determination. *See DeBoard*, 211 F. App'x at 416. Moreover, the Sixth Circuit has affirmed denials of disability benefits for individuals with GAF scores lower than 50. *See id.*

Here, the ALJ's failure to mention the two GAF scores in the mid 40s was not reversible error. As a therapist, Ms. Applebaum is not an "acceptable medical source," and thus her assessment cannot be used to established the existence of a medically determinable impairment. Further, although these GAF scores indicate Plaintiff exhibits symptoms or impairments in social, occupational, or school functioning, which may be consistent with the inability to keep a job, they are subjective assessments, and alone are not conclusive of disability. The ALJ's failure to reference both GAF scores was not legal error.

Moreover, while the ALJ did not directly reference the GAF scores, he explicitly discussed the reports that contained them.[3] The ALJ noted that, upon receiving treatment at Insight, Plaintiff was diagnosed with schizoaffective disorder and major depressive disorder with psychotic features (Tr. 21). This diagnosis was part of the initial intake assessment performed by Ms. Applebaum, on the same page – directly above – the GAF score that she assigned to the Plaintiff (Tr. 221). Similarly, the ALJ also cited to Plaintiff's consultative psychological

---

[3] Although an ALJ is required to develop the record fully, he is not required to discuss all evidence submitted. *See Craig v. Apfel*, 212 F.3d 433, 436 (6th Cir. 2008) (holding that reliance upon particular portions of evidence contained in the record indicates full consideration of that evidence). Failure to cite specific evidence does not indicate that it was not considered. *Id.*

-14-

examination with Dr. Boneff, and his diagnoses of schizo-affective disorder and crack cocaine

abuse in long term remission (Tr. 21).  These diagnoses were part of the psychiatric medical

report prepared by Dr. Boneff, and directly below them in the same paragraph was his assigned

GAF score of 47 (Tr. 231).  By citing particular evidence from the initial intake assessment by

Ms. Applebaum and Dr. Boneff's psychiatric medical report, the ALJ demonstrated that he

considered the reports, as well as the GAF scores which they contained, in rendering his decision.

The ALJ's consideration of the medical opinions containing the GAF scores belies Plaintiff's

argument that the failure to consider these reports was being rationalized post-hoc (Pl.'s Reply

Br. at 2).

       Further, based on other evidence in the reports at issue, the ALJ had good reason to place

limited stock in the GAF scores.  The prognosis from Dr. Boneff made no mention of Plaintiff

being unable to work, and only expressed concern that she may not be capable of managing her

own benefit funds (Tr. 233).  During the intake assessment, Ms. Applebaum noted that Plaintiff

had normal appearance, motor control, speech, memory, interview behavior, judgment and

thought processes (Tr. 220).  Although Plaintiff was found to be of below average intellect, most

of her symptoms – suspicions, phobias, and visual hallucinations – were graded as mild (Tr.

220).  Plaintiff also showed signs of severe depressed affect and unrealistically low self concept,

but  these findings alone were insufficient to suggest that she was unable to work due to

disability (Tr. 220).  The SSA did not suggest that GAF scores are not relevant medical evidence

and are of no value, but simply that failure to discuss them directly is not reversible error,

particularly where, as here, it is demonstrated that the ALJ considered the reports containing

them.

The ALJ's failure to discuss Dr. Gotlib's medical assessment of Plaintiff's ability to perform work-related activities is not reversible error. While Dr. Gotlib is Plaintiff's treating psychiatrist, nowhere in the report does he offer the opinion that Plaintiff is unable to work (Tr. 288-90). In fact, Plaintiff's claim that Dr. Gotlib's mental functional assessment would preclude any full-time work activity appears exaggerated. Dr. Gotlib indicated that Plaintiff had "poor" ability to relate to others in the work place, deal with work stresses, behave in an emotionally stable manner, and relate predictably in social situations, but he did not find that this rendered Plaintiff completely incapable of making occupational adjustments (Pl.'s Br. at 4; Tr. 289-90). Plaintiff also inflated Dr. Gotlib's assessment of her ability to use judgment, function independently, maintain attention and concentration, maintain her personal appearance, and demonstrate reliability. Dr. Gotlib determined that Plaintiff's capability in these areas was "fair" (Tr. 289-90), not "severely limited" as Plaintiff suggests (Pl's Br. at 4). The ultimate RFC assessment provided that Plaintiff needs to work in environment with very limited contact with others (Tr. 21). Therefore, the RFC was consistent with Dr. Gotlib's assessed limitations. Thus, Dr. Gotlib's assessment of Plaintiff's ability to perform work-related activities, while not directly discussed, was adequately considered by the ALJ. Dr. Gotlib's assessment does not provide evidence that Plaintiff is precluded from all work, and thus the ALJ's failure to explicitly discuss it in his decision is of no import.

Third, the ALJ's failure to discuss treating physician Dr. Zouabi's opinion is not reversible legal error. In a "Medical Needs" form filed with the Michigan Department of Human Services in August 2007, Dr. Zouabi indicated that Plaintiff was unable to work at any job (Tr. 209). Although the opinion of a treating physician is entitled to great weight, it is ultimately the duty of the Commissioner, not the treating physician, to make the determination of disability. *See*

-16-

20 C.F.R. § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

2004) ("The determination of disability is [ultimately] the prerogative of the [Commissioner], not

the treating physician") (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).  Because

the definition of disability requires consideration of both medical and vocational factors, a

treating physician's statement that a claimant is "disabled" is not binding. *King v. Heckler*, 742

F.2d 968, 973 (6th Cir.1984).  Further, an ALJ may disregard a treating physician's conclusory

statement regarding a claimaint's disability absent sufficient findings or other evidence

supporting the treating physician's opinion. *See Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 7

(6th Cir. 2004); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir 1986);

*see also Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010) (holding that the

ALJ's initial disregard of treating physician's statement that the claimant was disabled was

correct because that determination is reserved to the Commissioner).  No supporting details were

offered by Dr. Zouabi for the conclusion that the Plaintiff was unable to work (Tr. 209).  Dr.

Zouabi merely checked the box for "no" after the question "can the patient work at any job?" (Tr.

209).  Plaintiff mischaracterizes this form as a medical opinion of a treating physician that is

entitled to deference (Pl.'s Reply Br. at 3).  Because it was the responsibility of the

Commissioner – not Dr. Zouabi – to make the legal determination of disability, no special

significance needed to be given to this opinion.  The ALJ was not bound to adopt Dr Zouabi's

conclusory opinion.

## 2.    The ALJ Failed to Provide Adequate Reasoning for Discrediting Dr. Gotlib's Opinion

Plaintiff next argues that the ALJ was required to fully credit the opinion of her treating

psychiatrist, Dr. Gotlib, as expressed in August 2009 and again in January 2010 (Pl's Br. at 11).

Defendant responds that the ALJ explained to Plaintiff's counsel the problems he found with Dr.

Gotlib's August 2009 opinion at the hearing and gave Plaintiff's counsel a chance to rectify those problems by submitting the January 2010 opinion, but the additional opinion failed to address and eliminate the problems the ALJ identified at the hearing (Def.'s Br. at 11).

A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007). However, if not accorded controlling weight, the ALJ must consider a series of factors in determining the weight to be accorded the treating physician's opinion, including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009). Additionally, the ALJ "must provide good reasons for discounting treating physicians' opinions, reasons that are sufficiently

specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242. Here, the ALJ failed to provide good reasons for discounting Dr. Gotlib's opinion.

First, the ALJ correctly stated that Dr. Gotlib's diagnosis in his August 2009 opinion was not established from the treatment notes (Tr. 35). In his August 2009 opinion, Dr. Gotlib indicated that Plaintiff had major depression with psychotic features and schizoaffective disorder (Tr. 290). He also indicated that Plaintiff heard voices and was afraid of people (Tr. 290). Neither of these claims were supported by the treatment notes (Tr. 293-98). At the hearing, the ALJ complained – and Plaintiff's counsel agreed – that the treatment notes were not helpful in terms of trying to figure out what was happening to Plaintiff because they consisted primarily of checking boxes and a few scrawled notes at the bottom (Tr. 35). The treatment notes contained generic descriptors such as "major depression with psychotic features," without much detail (Tr. 293-98). During the hearing, the ALJ noted "[Dr. Gotlib] indicates that [Plaintiff] hears voices and is afraid of people, but there is nowhere in his treatment notes that he says that" (Tr. 35). Because Dr. Gotlib did not document any objective signs in his records, it is difficult to determine the nature, severity, or persistence of the signs and symptoms. Moreover, Dr. Gotlib never explained why these findings prevent Plaintiff from performing all work activity (Tr. 290).

In order to expand upon the "very limited" medical evidence provided with the August 2009 opinion, the ALJ extended Plaintiff the opportunity to submit a more detailed opinion from Dr. Gotlib (Tr. 37-38). The supplemental letter submitted by Dr. Gotlib on January 25, 2010, reads as follows (Tr. 310):

> The above named client was first seen on May 1, 2008. She presented "I hear voices, reach in the air and feel sad most of the time". Ms. Linebarger reported that her psychiatric history started in 1990 with hearing voices resulting in

hospitalization at Providence, Riverview and Receiving Hospital. However, she was unclear of dates and details.

The basis for diagnosis of Scizo Affective disorder 295.70 and Major Depressive disorder that meet the criteria are delusions and hallucinations and depressed mood most of the day.

Ms. Linebarger relates that she hears voices saying, "son is trying to kill you and my aunt wants me to be in death" client has disorganized speech and feelings of persecution. She is fearful of people and unable to interact with others appropriately. Therefore she isolates and does not leave her home. In addition, she is unable to maintain attention and concentration.

In conclusion it is my opinion that Ms. Linebarger is unable to function in any work environment.

The ALJ rejected this letter because it is "not entirely consistent with the medical evidence of record and testimony, and therefore is not persuasive" (Tr. 22).

This Magistrate Judge finds that the ALJ did not adequately explain his rejection of Dr. Gotlib's January 2010 letter, and may not have given Dr. Gotlib's opinion appropriate weight. Specifically, the ALJ fails to address Dr. Gotlib's conclusion in the third paragraph that "[Plaintiff] is fearful of people and unable to interact with others appropriately" (Tr. 310). This statement suggests that Plaintiff may not be fit to work any setting that involves interaction with others, even one requiring only limited contact with supervisors and co-workers as provided by the RFC assessment. However, instead of reconciling Dr. Gotlib's opinion with the RFC assessment, the ALJ rejected it (Tr. 22). The sole reason provided by the ALJ for disregarding Dr. Gotlib's letter was that it was "not entirely consistent with the medical evidence" (Tr. 22). However, the ALJ did not cite any inconsistencies between the conclusions in Dr. Gotlib's letter and the rest of the medical evidence. Plaintiff's diagnosis with schizo-affective disorder and major depressive disorder, Dr. Boneff's independent observation that Plaintiff seemed to be "in questionable touch with reality," and Plaintiff's own refusal to leave her home to take her son to

school, all are consistent with Dr. Gotlib's findings. Further, these alleged inconsistencies alone are not sufficient to support a wholesale rejection of Dr. Gotlib's opinion. In light of Dr. Gotlib's expertise as a psychiatrist, and the fact that Plaintiff had repeatedly received treatment from him for more than eighteen months, the ALJ was required to provide clear and specific reasons for discounting his opinion. Therefore, a remand is warranted for the ALJ to further consider Dr. Gotlib's medical opinion expressed in the third paragraph of the January 2010 letter, and, at a minimum, provide a more thorough explanation of why he chose to reject Dr. Gotlib's letter.

### 3. The ALJ's Finding that Plaintiff's Back Condition Was Not A Severe Impairment Is Supported By Substantial Evidence

Plaintiff's final argument is that the ALJ should have found that her back condition was a severe impairment at step-two of the disability analysis. Plaintiff points to treatment notes from her monthly check-up appointments with her treating physician, which demonstrate ongoing problems with lower back pain (Pl.'s Br. at 15, Tr. 191, 193, 198-99, 201-08, 210-11, 226, 256, 259-60, 265, 269-75, 281-87). Plaintiff also points to the "Medical Needs" form completed by her treating physician, Dr. Zouabi, in August 2007, opining that she could not maintain any full-time work (Pl.'s Br. at 15, Tr. 209). Plaintiff contends that the ALJ's failure to conclude that Plaintiff's back condition did not satisfy the *de minimis* standard of step-two severity was legal error warranting remand.

Plaintiff correctly states the Sixth Circuit standard for determining step two severity, which provides that an impairment may be found "not severe" only if it is so slight that it could not result in a finding of disability no matter how adverse a claimant's vocational factors may be. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *see also* SSR 85-28, 1985 WL 56856 (1985) (defining "not severe" as only a slight abnormality with minimal effect on an individual's ability to do work). No physical limitations on Plaintiff's ability to work were indicated at any of her

monthly appointments (Tr. 191, 193, 199-207, 210-11, 259-60, 269-72, 274-76, 280-87).
Plaintiff relies upon the belief that, because she was repeatedly prescribed Vicodin and Flexeril,
she must have some functional limitation (Pl.'s Br. at 15). However, there is no indication or
suggestion of what that functional limitation might be (Pl.'s Br. at 15).  The ALJ expressly states
that Plaintiff's low back pain was determined to be non-severe because the medical evidence
does not establish that it has even a minimal effect on Plaintiff's ability to work (Tr. 19).  Given
the lack of medical evidence of Plaintiff's employment limitations due to her back condition, it
was not error for the ALJ to determine that it was not severe.

Further, Plaintiff's argument is of little significance because the ALJ found she had other
impairments – major depressive disorder with psychotic features and schizoaffective disorder –
that met the criteria for severity at step two (Tr. 19).  The severity requirement of the sequential
evaluation process functions as an administrative convenience for screening out claims that are
not grounded in medical evidence. *See Higgs*, 880 F.2d at 863 (6th Cir. 1988).  But, if a claimant
has more than one impairment, the ALJ must consider all medically determinable impairments
when assessing their RFC, including those that are not severe. Residual Functional Capacity, 20
C.F.R.§ 404.1545(a)(3) (2012).  Thus, once the ALJ determines that there is at least one severe
impairment, it is "of little consequence" whether the ALJ characterizes any other alleged
impairment as severe or not severe. *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th
Cir. 2003).  Without any recognized functional limitations due to Plaintiff's back pain, the ALJ
reasonably declined to include any exertional limitations in her RFC (Tr. 21).  In doing so, the
ALJ fully considered the limited information on Plaintiff's back condition in his RFC
assessment, and Plaintiff's argument is without merit.

## III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED** and that this case be **REMANDED** for further proceedings addressing whether the treating physician's opinion should be given controlling weight and, if not, the reasons for whatever weight it is given.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated:  July 18, 2012

<u>Certificate of Service</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 18, 2012, by electronic and/or ordinary mail.*

<u>*s/Melody Miles*</u>
*Case Manager*
(313) 234-5540